IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANGEL F. WILSON,

       **Plaintiff,**

vs.                                                    No.  01cv0761 DJS

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's (Wilson's) Motion to Reverse and Remand for a Rehearing **[Doc. No. 13]**, filed June 25, 2002.  The Commissioner of Social Security issued a final decision denying Wilson's application for supplemental security income.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion to remand is well taken and will be GRANTED.

## I.  Background

Wilson, now 30 years old, filed her application for supplemental security income on June 28, 1996 (Tr.105-06), alleging disability since June 17, 1996, due to depression and a recurring vascular tumor (hemangioma) in the left foot which causes chronic pain. Wilson has a high school education and past relevant work as a children's institution attendant and a general clerk.  On February 24, 1999, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding that Wilson's impairments were severe but did not singly or in combination meet or equal in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1.  The

ALJ further found Wilson retained the residual functional capacity (RFC) for light and sedentary work limited by a sit/stand option, simple routine work, and minimal contact with the public and coworkers.  Tr. 19.  As to her credibility, the ALJ found Wilson's testimony was not wholly credible in that "she had a tendency to overstate the intensity of her symptoms."  Tr. 16.  Wilson filed a Request for Review of the decision by the Appeals Council.  On May 23, 2001, the Appeals Council denied Wilson's request for review of the ALJ's decision.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Wilson seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while

the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. §§ 404.1520 (a-f) and 416.920 (a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*,  987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to

the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse, Wilson makes the following arguments: (1) substantial evidence does not support the ALJ's RFC concerning her mental capabilities; (2) the ALJ erred because she did not perform the proper analysis regarding her past relevant work; (3) substantial evidence does not support the ALJ's step five finding that she was not disabled because the hypothetical question to the vocational expert (VE) did not include all of her impairments; and (4) substantial evidence does not support the ALJ's credibility finding.

## A.  Mental Impairment

Wilson challenges the ALJ's finding that, although she has a severe mental impairment, she retains the ability to perform simple, routine work with minimal contact with the public and coworkers.  The ALJ found Wilson had a "mental impairment which may affect her ability to perform the mental activities of work."  Tr. 16.  Specifically, the ALJ noted:

> When Claimant applied for Supplemental Security Income in June 1996, she did not list any mental or emotional impairment as a disabling condition.  Nor has Claimant complained of psychological symptoms until the time of hearing.  When Claimant has described such symptoms of difficulty falling asleep, frequent crying episodes, poor energy level and motivation, and poor concentration; she has invariably attributed them to chronic pain.  Nevertheless, the evidence of record shows that Claimant does have a mental impairment which may affect her ability to perform the mental activities of work.
>
> \* \* \* \* \* \* \* \* \*
>
> There are notes in Claimant's record which suggest that there is a serious question of whether she has complied with recommended treatment for her mental impairments.  She has demonstrated a persistent reluctance to pursue mental health treatment, although treatment has been recommended several times, by different doctors, particularly Dr. Kozoll.  In April 1995, Dr. Kozoll recommended that Claimant "should probably be in

> ongoing psychotherapy, but possibility of compliance is limited." Claimant was approved for counseling under the State of New Mexico Children, Youth and Families Department in July 1995; but she apparently did not take advantage of this assistance. Claimant told Dr. Fredman that she saw a counselor in Bernalillo, New Mexico, at the end of December 1996; but there is no other reference in this record to support that statement.
>
> Dr. Kozoll has been prescribing Zoloft, from April 1995 until Claimant knew she was pregnant at the beginning of 1998. He apparently thought that Claimant was taking the medication all along, although he has noted times when Claimant was not taking her medication as prescribed. In July 1996, when Claimant listed her medications in a form submitted to the Administration, she did not include any antidepressant. Then, in December 1997, Claimant stated that she was taking Zoloft, as prescribed by Dr. Kozoll and she told Dr. Fredman in January 1997 that she was taking Zoloft at that time. At the hearing, however, Claimant testified that she had stopped taking Zoloft in 1995 or 1996, although she also testified that it helped relieve her symptoms. When Dr. Kozoll first prescribed Zoloft, he noted that Claimant's symptoms improved significantly in two weeks. Remarkably, Claimant testified at the hearing that she had been taking Welbutrin since June 1998, but that it was not helping her.
>
> Although Claimant has not actually alleged that she is disabled by a mental impairment and in spite of her persistent failure or refusal to seek treatment or take prescribed anti-depressant medication, there is sufficient evidence of record to assess the functional effects of Claimant's mental impairment. Once the diagnostic criteria are satisfied for an impairment, functional criteria are used to rate impairment severity. *See* Listing 12.04B.

Tr. 18-19 (citations to the record omitted). Although the ALJ cited extensively to the record to support her finding that Wilson persistently failed or refused to seek treatment or take prescribed antidepressant medication, it is not clear to the Court whether this was a basis relied upon by the ALJ to deny benefits. Under the regulations, benefits will be denied to a claimant who fails without good reason to follow treatment prescribed by his/her physician if it can restore his/her ability to work. *See* 20 C.F.R. § 416.930. The record indicates that Wilson responded well to Zoloft when she actually took it. *See e.g.,* Tr. 232 (trial of Zoloft; "should probably be in on-

going psychotherapy but possibility of compliance limited"); Tr. 230 ("feels much better after 2 wk of Zoloft, crying decreased, ability to handle children improved, feels more social, decreased sadness about social and economic deprivations; extensive counseling & still advise therapist; Pt not ready for this"); Tr. 207 (depressed, discontinued Zoloft 3 wks ago; depression management, needs to take Zoloft reg.).  On remand, the ALJ should follow the analysis set forth in SSR 82-59. *See*  SSR 82-59, 1982 WL 31384 (1982)(Titles II and XVI: Failure to Follow Prescribed Treatment); *see also, Teter v. Heckler,* 775 F.2d 1104, 1107 (10th Cir. 1985).

Additionally, the ALJ did not address Dr. Fredman's opinion that Wilson's prognosis without psychiatric care was guarded and, with such care, fair.  Tr. 187.  Dr. Fredman, a psychiatrist and agency consultant, evaluated Wilson and opined that "[f]rom a psychiatric perspective, the potential for sustained work activity at this time would be poor."  *Id.*  Dr. Fredman concluded that Wilson would have problems handling the stresses and pressures of a job setting and would have difficulty in her interactions with coworkers and supervisory personnel. *Id.*  Although Dr. Fredman is not considered a treating physician, under the regulations, he is considered a "nontreating source."  *See* 20 C.F.R. § 416.902.  A nontreating source means "a physician, psychologist, or other acceptable medical source who has examined [claimant] but does not have, or did not have, an ongoing treatment relationship" with the claimant.  *Id.*  This term includes an acceptable medical source who is a consultative examiner for the agency, when the consultative examiner is not a claimant's treating source.  *Id.*  An ALJ must give "more weight to the opinion of a source who has examined [claimant] than to a source who has not examined [claimant].  *See* 20 C.F.R. § 416.927(d)(1).  In addition, the ALJ generally must give more weight to a specialist about medical issues related to his or her area of specialty than to the opinion of a

6

source who is not a specialist.  *See*  20 C.F.R. § 416.927(d)(5).  Furthermore, the ALJ may not ignore Dr. Fredman's opinion and must explain the weight given to his opinion in her decision. *See*  20 C.F.R. § 416.927(d).  On remand, the ALJ must consider Dr. Fredman's opinion regarding Wilson's ability to engage in substantial gainful activity and explain the weight given to it.

Wilson also contends that the ALJ gave more weight to the State agency experts' opinions than her treating physician even though they are considered nonexamining sources.  Under the regulations, State agency expert opinions "must be treated as expert opinion evidence of a nonexamining source."  *See* SSR 96-6p, 1996 WL 374180, at *1.  Like opinions by nontreating sources, the ALJ "may not ignore these opinions and must explain the weight given to these opinions in their decisions."  *Id.*  However, "the opinions of State agency medical and psychological consultants . . . can be given weight only insofar as they are supported by evidence in the case record . . . ."  *Id.* at *2.  Notably, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."  *Id.* at  *3.  This may occur where the state agency consultant's opinion "is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source."  *Id.*

In this case, the ALJ recognized the fact that Wilson's treating physician was not a specialist and stated, "With due deference to Dr. Kozoll, he is a family practitioner and not a specialist in psychological or emotional conditions, a fact that he acknowledged in his notes on more than one occasion."  Tr.17.  Dr. Donald Gucker, a psychologist and the State agency expert,

reviewed the record, including Dr. Fredman's evaluation, and completed a Mental Residual Functional Capacity Assessment form and a Psychiatric Review Technique form on January 17, 1997.  The ALJ relied on Dr. Gucker's opinion that Wilson's mental impairment was moderate and that she retained the ability to perform simple work.  Tr. 19.  However, the ALJ failed to discuss Dr. Fredman's prognosis for Wilson in terms of her ability to engage in sustained work activity.  Although the ALJ properly considered Dr. Gucker's opinion, as already discussed above, on remand, she must explain the weight given to Dr. Fredman's opinion and explain why she gave more weight to Dr. Gucker's opinion.

## B.  Credibility Determination

Wilson contends the ALJ's finding that she was not credible is not supported by the evidence.  Specifically, the ALJ found: "With a few exceptions, already discussed above, Claimant's statements of record and her testimony at the hearing concerning her physical symptoms and functional limitations are generally consistent with the complaints she has made to her doctors.  Claimant's allegations of total disability is, however, inconsistent with her descriptions of her daily activities."  Tr. 15.

Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence.  *Diaz v. Secretary of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).  "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988).  However, the ALJ's credibility determination does not require a formalistic factor-by-factor recitation of the evidence.  *Qualls v. Apfel*, 206

F.3d 1368, 1372 (10th Cir. 2000).  The ALJ need only set forth the specific evidence he relies on in evaluating claimant's credibility.  *Id.*

In this case, the ALJ cited to the record to support her credibility finding.  The ALJ cited to Wilson's Physical Daily Activities Questionnaire.  Tr. 126.  Wilson completed this form on July 22, 1996, and indicated she took care of her two children, kept her home "together" and cooked three or four times a day.  Wilson also indicated she "cleaned often" and "constantly" kept her eye on her two boys.  Notably, Wilson reported her condition had not changed her activities because she "had to adapt and live with it."  *Id.*  Wilson also indicated she did not need any help with her housekeeping activities and did her own shopping.  The ALJ also cited to Dr. Fredman's January 6, 1997 report.  *Id.*  At that time, Wilson reported she prepared her meals, washed her clothes, and took care of basic chores.  The Court finds that substantial evidence supports the ALJ's credibility determination.

## C.  VE Hypothetical

Wilson argues that the ALJ's hypothetical to the VE was defective in that the ALJ failed to include specific functional limitations she experienced due to her mental impairment.  According to Wilson, when all of her impairments were included in the hypothetical, the VE testified that there were no jobs she could perform.

However, hypothetical questions to the VE need not take into account all of claimant's alleged impairments.  Questions to the VE are proper when they take into account the impairments substantiated by the medical reports and the impairments accepted as true by the ALJ.  *See Gay v. Sullivan,* 986 F.2d 1336, 1341 (10th Cir. 1993); *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990).  In this case, the ALJ did not accept as true the impairments alleged by

9

Wilson's counsel in her hypothetical to the VE.  This was proper because an ALJ is bound only by vocational testimony regarding impairments she has accepted as true.  *Talley*, 908 F.2d at 588.

**D.  Conclusion**

On remand the ALJ should follow the analysis set forth in SSR 82-59 and must consider Dr. Fredman's opinion regarding Wilson's ability to engage in substantial gainful activity and explain the weight given to it.  The Court's remand is limited in making the express findings identified in this paragraph.  The Court does not require any result.  This remand simply assures that the correct legal standards are applied in reaching a decision based on the facts of the case.

**NOW, THEREFORE,**

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing **[Doc. No. 13]**, filed June 25, 2002, is GRANTED.  This matter is remanded to allow the ALJ to consider Dr. Fredman's opinion regarding Wilson's ability to engage in substantial gainful activity and explain the weight given to it.  The ALJ should also follow the analysis set forth in SSR 82-59.

A judgment in accordance with this Memorandum Opinion and Order will be entered.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**